Good morning, Your Honors. Adam Amir for Petitioner. May it please the Court. The New York crime of pettit larceny is not categorically a crime of moral turpitude, and the BIA's contrary decision should be set aside. There are two reasons for that. First, the text is not clear. Second, the case law does not support the government, and certainly not to the degree necessary to displace the plain text. On my first point, the Board misinterpreted the larceny statute. According to the Board, pettit larceny necessarily involves, in every case, an intent to deprive someone of property permanently or under circumstances where the owner's rights are substantially eroded. But New York larceny contains a wide range of mental states, some of which involve moral turpitude and some of which don't. Importantly, Section 4B covers the simple disposal of property for the benefit of oneself or another. That section does not require that a theft be made with the intent to acquire property permanently, nor with the intent to acquire the major portion of its economic value. Thus, it sweeps in de minimis or temporary thefts. The BIA recognized this, and Respondent's Brief offers no alternative textual interpretation of 4B. On this ground alone, the Court can grant the petition. Second, the Board should have stopped the text, particularly when there is no case law interpreting Section 4B contrary to its clear textual meaning. The cases cited by Respondent, including Jennings, simply do not consider the section that's at the heart of this appeal, 4B. Instead, courts that have analyzed the language of 4B closely construe it just as I do here, following the plain text and concluding that it covers de minimis or temporary thefts. Because the state law is facially overbroad, the Court should grant the petition. I now welcome any questions from the Court. Yeah, let me ask two things. One, in this case, when it first came up as a non-argument calendar case, much of the time was focused on whether and the constitutionality of the CIMT rule. You don't mention that at all in your brief or in your argument, and I want to be sure that that argument has been abandoned. So that you can answer in a bit. The second is, I kind of agree with you if you look at the plain text. But looking at the plain text, it's frankly not really what we do, whatever some people say. And if you read cases like Jennings, and it's more recent, Jennings is 1986, but People versus Medina, which is a 2011 case, doesn't the New York Court of Appeals make quite clear that when they use the term appropriate and so on, that they are saying that this must be for more time. And if we put that in the context of a Supreme Court saying, is there a realistic chance of this being charged as a crime when there is a taking which isn't of a substantial time? Aren't we stuck with what New York has said in saying that this fits the definition? Thanks, Your Honor. So as to the and don't contest it here. On Jennings and Medina, if you look closely at the language of those cases, you'll see that although there's some general stray language, they're actually not talking about or interpreting 4B. So if I could direct the court's attention, for example, to Jennings at 119, there is clear that the Court of Appeals is analyzing a specific theory that the prosecution brought. Quote, the gist of the people's claim is that defendants evinced an intent to deprive its true owner of money's economic value or benefit. That economic value or benefit language comes right from 4A, which all parties agree would be morally turpitudinous here. Jennings continues. It says the proof, quote, proof was insufficient to show an intent to acquire the provision that is not at issue in this appeal, 4A. And if you look at Medina, it quotes a decision as saying, you know, an intent to deprive does not allow for temporary thefts. But if you actually look to what it's quoting, it comes from a decision, People v. Matthews, which just like Jennings, is focused on different provisions of the statute. So if I could quote that, the language, the People v. Matthews case that People v. Medina relies on through Blocknell, it says, quote, the court omitted from the definition the statutory requirement that withholding of the property be permanent or for so extended a period of time that the major portion of its economic value is lost. Again, sorry, go ahead. If we agree with you that these cases aren't directly in point, and you have the appellate division cases kind of going ever and young, shouldn't we certify? I don't think certification is necessary, Your Honor. As this court knows very well, you see hundreds of cases, categorical approach cases that turn on some dispute of state law. It isn't this court's practice to certify anytime there's such a dispute. And really, it can't be because of the volume of cases, it would just be administratively problematic. But there's other reasons why certification isn't necessary. In Gutierrez v. Smith, this court laid out some factors for when certification is appropriate. And it said that it isn't necessary when, quote, New York will have many opportunities to correct us. So this is a commonly prosecuted statute, there would be opportunities for the New York courts to weigh in. And also, that case notes that certification isn't appropriate where time is of the essence. And my client has been removed pending appeal. So each day that this case goes on, he is away from his family in the country he's known for 10 years as a lawful permanent resident. One of Judge Kennedy's many contributions to our court is to sensitize us to the value of certification. And in fact, the New York Court of Appeals has been very favorably inclined to certification. So I think the point that Judge Calabresi is making in the form of a question is a very valuable one, that there are various cases that seem to point in different directions. We don't have a definitive ruling from the New York Court of Appeals on the language on appropriate property, 155004B. It seems that a certification would be appropriate. And wouldn't it make more sense to get a ruling from the New York courts for us to go on by ourselves and then see what happens? I think this court often has to rule, make decisions under the categorical approach about disputes that turn on state law. But it is the extremely rare case that a case is certified. So I think that that, of course, if this court looking at the plain text can't determine what it means, then it can certify. But I think the precedents of this court and the Supreme Court say that if the plain text of the statute shows clear overbreadth, then that's it. That's all the categorical approach requires. So for example, in the Hilton case, this court said when the state law is spatially overbroad, we look no further. There's no need to certify when you have that overbreadth on the face of the statute. I'd like to just get back to one question that Judge Calabresi had about the you know, Judge Calabresi, you asked why this, you know, the realistic probability test shouldn't come into play. I think, you know, two thoughts on that. One, of course, we contend the statute is spatially overbroad. And so Hilton and Williams v. Barr say, you know, if this court's able to identify that overbreadth and see that the plain language, as you recognize, is quite broad, then you don't have to resort to any catalog of state cases. And that's the language of Hilton at 60. So in that case, the realistic probability test is inappropriate. And also, just as a, it hasn't, this issue on chainery grounds was never considered by the BIA or the IJ. Really, the first time it comes up is in respondent's brief, response brief. So I think under those I have a question on Hilton, another question on Hilton. In Hilton, we found a state statute, as you know, spatially overbroad, because it covered transfers of over 25 grams of marijuana, whereas the relevant federal offense covered transfers of over 30 grams of marijuana. My question is, is Hilton's overbreadth is based not on such an express incompatibility, but instead on a statute's silence as to an essential element? So I think that Hilton, as applied in Williams v. Barr, shows that a statute that requires some interpretive work to understand its meaning can still be spatially overbroad. So in Williams, this court was and it noted that although the, quote, although the state statute is not a paragon of clarity, and that's Williams 74, it would nevertheless find a textual difference. And it said, quote, the textual difference is fatal. We need not go further. So in that case, it's clear that whether some, even if there's some interpretive work to do to determine what the plain meaning is, it's still appropriate when you find facial overbreadth to stop at the text and find that it's categorically overbroad. And I think looking at this statute, you know, you have pretty clearly language in 4B that is very capacious. It's not solely silence that is giving meaning here. This statute allows, you know, taking, wrongfully taking with the intent to, you know, dispose of property for the benefit of oneself or another. Dispose in this take something with just intent to transfer to benefit yourself, that sweeps in all sorts of temporary or de minimis taking. And under those circumstances, it's not just silence that is giving you the plain meaning of a statute, but it's plain language just shows that it is very broad. Well, this is Judge Sullivan. If you're correct about Section B, doesn't that make Section A utterly unnecessary? No, Your Honor. I think that 4A and 4B, under 4A, you see a part of the statute that is not totally foreign in criminal statutes, where you have sort of a sliding scale of mens rea. So, for example, some statute that says, you know, willful, knowing, or reckless mental states are sufficient for a crime. I think, you know, when we're trying to give effect to language, for example, we're trying to use a surplusage canon, as I hear you to be applying, it's not an on-off switch. I think we apply it when we're trying to give effect, if I don't think we can read, you know, for example, under 4A, a theft that requires for so extended a period of time to acquire the major portion of economic value, that would sweep in permanent thefts made with the intent to take them permanently. So there's clearly some intent by the legislature here to give a sliding scale of mens rea in decreasing order of culpability. And as I know, this often includes a willful or knowing. It's like a less culpable, more capacious version. So in giving effect to 4B, you don't, you know, it doesn't violate any other provision of the statute. Thank you. Judge Sullivan, any more questions? No, I have no further questions. Thank you. You'll have time for rebuttal. You'll have three minutes, Mr. Amir. We'll now hear from Good morning, Your Honors, and may it please the court, Saradan on behalf of the Attorney General. The government asked the court to deny the petition for review because Petitioner's three New York convictions for petty larceny constituted a crime involving moral turpitude and rendered him removable. The primary issue for the court to resolve is whether New York's petty larceny statute is a categorical match with the board's expanded theft definition laid out in matter of Diaz-Lazurada. As an initial matter, the government asked the court to accord Chevron deference to the board's enhanced definition of theft in Diaz-Lazurada and applied in matter of Obeah. Within Obeah, the board addressed the specific statute and properly concluded that because the statute required an intent to permanently or virtually permanently deprive the owner's property rights, that it's a categorical match with the board's definition of theft. When considering the statutory terms in Obeah, the board noted the definition of appropriate, specifically subsection B, was not plain because the language did not make clear the duration or extent of disposing of the property. Petitioner contends that this reference to subsection B was the board conceding to a broader intent or that the statute was not a categorical match. This, however, was not a concession. Rather, the board was identifying the uncertainty or the silence within the statute and was indicating why it turned to state law. After turning to state law, the board relied on Jennings and Medina to support its conclusion that New York's larcenous intent, which relies on the term deprived and appropriate in its entirety, to note a purpose to exert permanent or virtually permanent control or loss to the owner. Petitioner contends that because the court in Jennings italicized subsection A within the term appropriate, that it was simply addressing subsection A. However, the government would argue that based on the language of the decision, the court was clearly referencing the terms of deprived and appropriate in its entirety, and Jennings was Similarly, in Medina, the court identifies both of appropriate's two subsections without any emphasis to either section and confronts the term as a whole. And the court in Medina determined that the omission of the definitions of appropriate and deprived would mislead a jury to think that any withholding, permanent or temporary, constituted larceny. This clearly indicates that the If you agree that the definition that we don't defer to the BIA with respect to what the New York statute means, that we defer to the BIA on its definition, but as to New York statute, we must decide and we must, in effect, defer to New York, that it is New York's. If we don't find Jennings and Medina to focus specifically on this, isn't the appropriate thing to settle it once and for all by certifying and asking New York if it wants to tell us what this means? Of course, the appellate divisions are unclear on it. And if we agree with you that the language is clear, then that's it. But if we are in doubt, shouldn't we certify? If the court is in doubt, then we would agree that the court should certify. A petitioner argued that the court should not certify because the plain text was not or was overbroad. However, the government argues that the text was not overbroad and was not similar to the cases of Hilton and Williams. Within Hilton and Williams, these cases illustrate a very narrow set of circumstances where the language of the text is so obviously and unambiguously not a match with a generic definition. Specifically within Hilton, as Your Honor mentioned, there was an unambiguous comparison of whether 30 grams of marijuana was greater than 25 grams. And in Williams, there was an unambiguous comparison of a loaded versus unloaded firearm. These textual differences created a realistic probability that a state would apply the statute to conduct beyond the generic definition, and that's simply not the case here. Here, the meaning of duration or extent for subsection B is indeterminate within the text. Thus, the board had to look to state law to ascertain the meaning that the text suggests. Petitioner cannot simply infer that the silence means that there is no required duration. The fact that the petitioner is inferring amends REA or any other definition, it's more support that the board properly turns to state law to determine what conduct would fall outside or if any conduct would fall outside of the board's definition. The New York Court of Appeals does not have to accept certification. If a New York Court of Appeals, when we ask them, if we ask them with due deference to them, believes that the statute is clear enough as they have interpreted, they can reject certification. But if we are in doubt, shouldn't we let them decide what New York law is? You know, this law could be one thing or could be the other. I don't know what is best for New York, so shouldn't we in cases like this, not because it involves one thing, immigration or something else or something, but just for clarity, give New York a chance to say what it wants, if it wants to? Well, Your Honor, I would argue that New York has already said what it wanted to, based on Jennings and Medina and other cases such as People v. Parker or Guzman or Presente. It can perfectly well reject our request for certification citing Jennings and Medina. They can just say, we think we have spoken. And that settles it. That doesn't take much time. They have done it. Yes, Your Honor. If Your Honor feels so inclined, however, we would argue that it would not be necessary in this case and the court could decide based on Jennings and Medina and that the established... I'm sorry, go ahead. Thank you. These are my questions. Thank you. Okay. This is Judge Katzmann. If we don't certify, we have to look at some of the issues now, determine some of the issues now. Every definition of larcenous intent under Section 155.00, it seems to me, is clearly cabined in terms of either the duration or the extent, except for Section 155.004b. Why doesn't this suggest that Section 155.004b's silence is not ambiguous, but rather is instead a clear indication that Section 155.004b is not limited in either duration or extent? Well, Your Honor, because I could argue that by looking at the text of Section B, the term disposal inherently means permanent. If one disposes of something, then there's an inherent permanency within the language of the text. However, if we don't look to state law, then we're all just left with inferences on both sides, which is why the Board looked to state law to determine its meaning. And therefore, the Board concluded that it was a categorical match with its expanded definition. Okay. Another question I just want to be clear about is that, I mean, you contend that we should defer the BIA's conclusion that the New York State larceny is a crime involving moral turpitude. But I just want to be clear, you're not disputing that de novo review applies on this issue, are you? No, Your Honor. No, Your Honor, we are not. Thank you. De novo review applies to the Board's interpretation of state law. Thank you. Judge Sullivan. Look, my definition of dispose is to get rid of by throwing away or giving or selling to someone else. Do you think that admits of a temporary state of affairs? No, Your Honor. I would say that it doesn't. I would say inherently to dispose is to, if you throw something away or you give it away, it's permanently gone from your possession. Okay. That's all I have. Thank you. Thank you. Mr. Amir, you'll have three minutes for rebuttal. Thank you, Your Honor. I'd like to first pick up off of where Judge Sullivan questioned about dispose. I think dispose does not mean throw away in the context of this statute. So if you look at 4B, it says dispose of the property for the benefit of oneself or a third person. It doesn't quite make sense to say you throw something away for your benefit or for someone else's benefit. That doesn't strike me as a logical reading of the statute. Instead, you can look at the definition of dispose as to transfer, as in the disposition of property from one to another. That would also cohere with 3B, which speaks of disposing property in circumstances where an owner is unlikely to recover it. There would be no reason for the legislature to include that language, unlikely to recover, if dispose meant to throw away with some finality. But I'd like to get back to some of the other themes in this case, and that is the government has really no explanation for what this statute means. And, in fact, in its response brief, it admits that, quote, New York case law is limited regarding the applicability of 4B, and that's at page 22, note 5. This court's precedents say when there is overbreadth on the face of a statute, and as here where the government admits there's really nothing specifically interpreting this provision, then that is it. That is facial overbreadth and enough to find under the categorical approach that it is overbroad and not a CIMT. That follows Williams v. Barr, which did not involve some elusively clear statute. The court in that case did have to do some interpretive work. And if the categorical approach means anything, it means that you can't extrapolate the meaning from one subdivision to the other mental states, which are set out independently and disjunctively. Well, People v. Jennings, as Judge Sullivan says, the mens rea element of larceny, not the mens rea element of larceny under 155-004-B. The mens rea element of larceny is not satisfied by temporary use without the owner's permission or an appropriation outright for short-term use. Doesn't that end the inquiry? I don't think it does, Your Honor. I think there is definitely language like that in Jennings and in the case law. No, that is the language of Jennings. So, I mean, they didn't mean what they said, right? No, I think the case has to be read in the context of what was being prosecuted by the state. What theory the state was proceeding under. And the plain language of Jennings at 119, it's clear that the state was proceeding under different subdivisions where there was no issue about temporary or de minimis thefts. At 119, the court notes that the proof was insufficient to show that defendants intended to use the victim's money for so extended a period or under circumstances as to acquire the major portion of its economic value or benefit. Again, that mirrors language not found in 4B, but in 4A. And the mens rea here are set out disjunctively and independently. So it's not enough to find some language that says 4A doesn't suffice because we have to look at the minimum theoretical conduct under the statute. Again, so your point is that the Jennings court just spoke carelessly. Mens rea element of larceny is not what they meant. They meant the mens rea element of larceny with respect to a different subsection of the New York penal law. I would just say that we have to read these decisions in the context of what was actually at dispute in the case. And so their language is quite different. Can you point me to any case where someone has been prosecuted for larceny in New York State for joyriding or some sort of temporary use of property like you're postulating here? Yeah, so at footnote 7 of the opening brief, we list examples of people being charged with larceny for pranks or other sort of non-permanent thefts. There's also the People v. Wright case where someone took a bicycle with not the intent to steal it, but the intent to escape an altercation. And the criminal court said, quote, a person may be convicted of larceny even if the evidence does not establish an intent to steal as long as he or she takes property without an owner's consent. And so those are New York cases. But if you look at this court's decision in Walla v. Montese or the First Circuit's decision in Patel v. Holder, which was cited at our opening brief at 14, it makes clear that when a court is actually looking at 4B, actually comparing the language of 4A and 4B, it finds that 4B has the meaning we find here. It is capacious. So in Patel, for example, the First Circuit noted that to appropriate has two meanings. The latter form of appropriation requires that the defendant have acted without the intent to cause a permanent deprivation. So when courts are actually analyzing this, they actually do – they interpret it as we propose. Thank you. Well, in effect, you're saying that Jennings' statement, which would cover this, was dicta. That's what your argument is, that it was dicta because it was not talking about that situation. And that's reflective of your argument. In effect. I think it may be even less than dicta because it's not speaking – it's simply speaking in the context of its own case. I don't think its intent is to say something broader about the statute. It's just maybe using some general language in the context of its case. Thank you. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision.